UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC.,<br><br>*Plaintiff,*<br><br>-against-<br><br>VPIHC GROUP LLC d/b/a DISNEY EXECUTIVE BOOTCAMP; FRANK DA COSTA a/k/a FRANK DACOSTA a/k/a FRANK D'COSTA a/k/a FRANCOIS DA COSTA; LUIS LAINEZ; and JUAN PABLO PALOMO,<br><br>*Defendants.* | Case No.:<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND ANTI-CYBERSQUATTING<br><br>DEMAND FOR JURY TRIAL, REQUEST FOR PERMANENT INJUNCTIVE RELIEF |

Plaintiff Disney Enterprises, Inc., ("Plaintiff" or "Disney"), by and through its undersigned attorneys, alleges as follows:

<u>INTRODUCTION</u>

1.     Plaintiff files this action to combat the willful and intentional infringement of its intellectual property rights. Defendants own and operate a business instruction and certification program titled *Disney Executive Bootcamp* which offers Spanish language "Disney Cultural Immersion" and training on the "Disney Signature Method" of customer service to Latin American consumers. In providing these business education and certification services, *Disney Executive Bootcamp* trades on Plaintiff's trademarks and copyrighted properties in a

wholesale fashion to connect Defendants' unauthorized and unapproved services with Plaintiff's business education and training services. Plaintiff placed Defendants, and a predecessor entity, on written notice to cease such infringing conduct as early as 2018. Notwithstanding this notice, Defendants have continued with their unauthorized business training seminars in an ongoing effort to trade on Plaintiff's good will, and to confuse and defraud unsuspecting Latin American consumers.

2.      Plaintiff files this action to halt Defendants' infringement of Plaintiff's intellectual property rights and seek a permanent injunction, damages, costs, and attorneys' fees, as authorized by the Copyright Act and Lanham Act.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, as Plaintiff's claims arise under the Copyright Act (17 U.S.C. § 101 *et. seq.*) and Lanham Act, as amended (15 U.S.C. § 1051 *et. seq*).

4.      Venue is proper within the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## THE PARTIES

### PLAINTIFF

5.      Plaintiff Disney Enterprises, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

6.     Plaintiff and certain affiliated entities engage in businesses that include production and distribution of motion pictures and television programs, as well as live entertainment, including theme park experiences. Plaintiff also engages in merchandising and licensing the characters and elements associated with their motion pictures, television programs, and related franchises. These merchandising and licensing businesses span a variety of goods and services, including apparel, accessories, and novelty items. Additionally, Disney, through its wholly owned subsidiary Disney Business Productions, LLC d/b/a Disney Institute ("DI"), offers training programs which include educational and advisory development focusing on business excellence, leadership excellence, employee engagement, and quality service, all based on Plaintiff's world renowned business practices and methods (the "Disney Training").

7.     Plaintiff owns and/or exclusively controls numerous properties for which they have obtained Certificates of Copyright Registration with the U.S. Copyright Office (collectively, "Plaintiff's Copyrights"). *See* Exhibit 1 for a representative, non-exhaustive list of such copyrighted works.

8.     Plaintiff owns all rights, title, and interest in and to certain trademarks that are duly registered with the U.S. Patent and Trademark Office and/or established through Plaintiff's use in commerce in the United States (collectively, "Plaintiff's Trademarks"). *See* Exhibit 2 for a representative, non-exhaustive list of such federally registered trademarked properties.

9.     Plaintiff's merchandising and licensing business, as well as DI's Disney Training services, includes the use of Plaintiff's Trademarks in commerce. Because of widespread advertising and sales by Plaintiff, their affiliates, including DI, and/or respective licensees, as well as longstanding consumer recognition and acceptance, Plaintiff's Trademarks are powerful source identifiers of and for Plaintiff's authorized products and services. Plaintiff's Trademarks are each inherently distinctive and/or have acquired secondary meaning in the minds of consumers. All authorized merchandising and licensing of Plaintiff's Trademarks is subject to Plaintiff's control over such use, including the quality of the licensed goods and services.

10.     Plaintiff's Copyrights and Plaintiff's Trademarks will collectively be referred to as "Plaintiff's Properties."

<u>DEFENDANTS</u>

11.     Defendant VPIHC Group LLC d/b/a Disney Executive Bootcamp a/k/a certificaciondisney.com ("VPIHC") is a limited liability company organized under the laws of the State of Florida, operating, and doing business in this judicial district, with a principal location at: 9874 Moss Rose Way, Orlando, Florida 32832.

12.     Defendant Frank Da Costa a/k/a Frank DaCosta a/k/a Frank D'Costa a/k/a Francois Da Costa ("Da Costa") is an individual residing at 9874 Moss Rose Way, Orlando, Florida 32832, and doing business in this judicial district in Orlando, Florida. Da Costa is a manager, founder, and controlling force in the

operations of VPIHC. Da Costa has the right and ability to supervise, or otherwise control, the infringing activities alleged herein, and has a direct financial interest in such activities. Further, Da Costa has knowledge, or reason to know, of such infringing activities, and took actions that contributed to such activities.

13.     Defendant Luis Lainez ("Lainez") is an individual doing business in this judicial district in Orlando, Florida. Lainez, upon information and belief, is a controlling force in the operations of VPIHC, and actively participates in VPIHC's infringing activities in this judicial district. Lainez has the right and ability to supervise, or otherwise control, the infringing activities alleged herein, and has a direct financial interest in such activities. Further, Lainez has knowledge, or reason to know, of such infringing activities, and took actions that contributed to such activities.

14.     Defendant Juan Pablo Palomo ("Palomo"), is an individual doing business in this judicial district in Orlando, Florida. Palomo, upon information and belief, is a controlling force in the operations of VPIHC, and actively participates in VPIHC's infringing activities in this judicial district. Palomo has the right and ability to supervise, or otherwise control, the infringing activities alleged herein, and has a direct financial interest in such activities. Further, Palomo has knowledge, or reason to know, of such infringing activities, and took actions that contributed to such activities.

15.     VPIHC, Da Costa, Lainez, and Palomo will collectively be referred to

as "DEB" or "Defendants."

## FACTUAL ALLEGATIONS

### DEFENDANTS' INFRINGING CONDUCT

16.     Defendants own and operate a business under the name *Disney Executive Bootcamp* which offers Spanish language training, education and certifications concerning "Disney Cultural Immersion" and the "Disney Signature Method" of customer service to Latin American customers (the "Infringing Services").

17.     Da Costa was a *Walt Disney World*® Resort attractions employee from 2005 to 2007; and *Walt Disney World*® Resort restaurant employee from 2019 to 2020.

18.     In 2017, Da Costa, as the Manager of his predecessor entity, VPI Hospitality Group, LLC ("VPI"), entered into a contract with DI (hereinafter the "Disney Program Agreement"). Through the Disney Program Agreement, DI agreed to provide Spanish language Disney Training, specifically the "Disney Approach Series" regarding quality service at a conference hosted by VPI. *See* Exhibit 3.

19.      As part of the Disney Training, DI agreed to supply one of its instructors, which DI identifies as "Disney Facilitator(s)," to present relevant information in the form of a slide presentation and written materials on the Disney approach to quality service. This training would consist of a full day of classroom

instruction at a hotel chosen by Da Costa and VPI.  Additionally, DI agreed to provide a second half-day of instruction from one of its Disney Facilitators identified as "Disney's Business Behind the Magic Tour," which instruction included onsite training at Magic Kingdom. *See* Exhibit 3, pgs. 8-9.

20.     The terms and conditions of the Disney Program Agreement prohibited Da Costa, VPI, and the program participants from utilizing any materials provided by DI as part of the Disney Training, as well as any of the Plaintiff's Properties, in any advertising, publicity, or promotions which expressly or by implication suggested any endorsements by the Plaintiff of Defendants' products or services. The Disney Program Agreement describes those prohibited items as:

a. any materials or content presented or otherwise provided, as part of the programming under the Disney Program Agreement;

b. materials or content that refer to or depict the *Walt Disney World*® Resort (or any part thereof);

c. any design, logo, trademark, copyrighted work, or symbol of Disney, including, but not limited to unauthorized use of the DISNEY INSTITUTE or DISNEY word marks, or the use or reproduction of any of Plaintiff's Properties; and

d. written  presentation  materials,  oral  presentations,  or

PowerPoint® or similar visual slides ("Disney Materials"),
as well as any of Plaintiff's Properties, for or in conjunction
with any other commercial purpose.

*See* Exhibit 3.

21.     Da Costa and Lainez both attended the Disney Training which Da
Costa arranged and hosted through VPI in 2017. Lainez completed the Disney
Training as a participant and was awarded a DI certificate of completion and DI's
distinctive Mickey Mouse graduation hat complete with tassel. Upon information
and belief, Palomo also attended this or a similar Disney Training in 2017 as a
participant. A photo of Da Costa and Lainez at the Disney Training is shown below
with Da Costa on left and Lainez on right.



Photo [L to R]: Frank Da Costa and Luis Lainez

22.     In early 2018, DI discovered that Da Costa, Lainez, and VPI were
utilizing Disney Materials and Plaintiff's Properties in conjunction with their own

commercial activities, including the offering of a business education program which featured training on the Disney Model and otherwise suggesting that Da Costa was a Disney Facilitator associated with the DI. *See* Exhibit 4.

23.     On or about February 14, 2018, DI sent a letter to Da Costa demanding that Da Costa and VPI immediately cease and desist any and all unauthorized use of Plaintiff's Properties, specifically:

>       a)  stop all references to DI (including, without limitation, all DI logos);
>
>       b) remove all images that depict the *Walt Disney World*® Resort; and
>
>       c) remove all other character, designs, logos, trademarks, tradenames, copyrighted works, or symbols of DI or any of the other Disney Companies.

*See* Exhibit 5.

24.     Da Costa ignored this written notice and instead created a new entity, VPICH, and along with Lainez and Palomo, continued to offer Infringing Services between the Fall of 2018 into 2020. Among other things, DEB represented that Da Costa was a Disney Facilitator associated with the Disney Institute and authorized to present training on the "Disney Model." *See* photos below.





25.    On or about June 1, 2019, Da Costa was hired a second time as an
employee by *Walt Disney World*® Resort, this time to act as a host at the Brown
Derby Restaurant located at Disney's Hollywood Studios in Florida.

26.    As a direct result of Da Costa and DEB's continued marketing and

sale of the Infringing Services from 2018 through 2020, Da Costa was terminated for cause on April 16, 2020. As part of Da Costa's termination, and in conjunction with a related exit interview, Da Costa provided a statement dated April 10, 2020, acknowledging his receipt of the 2018 letter from DI, and that he was on direct notice that he was not authorized to associate himself with DI or utilize any of the Plaintiff's Properties.

27.     Notwithstanding DI's written notice, Da Costa's termination of employment in 2020, and Da Costa's own statement that he was not authorized to associate his Infringing Services with the Plaintiff, DEB has continued to utilize Plaintiff's Properties, including the DISNEY word mark in DEB's marketing, sale, offer for sale, and presentation of the Infringing Services. DEB's use of the DISNEY word mark includes, but is not limited to:

> a. use in the title of the Infringing Services: the *Disney Executive Bootcamp*;



Photo [L to R]: Juan Palomo; (unidentified person); Frank Da Costa, and Luis Lainez

     b.  in DEB's domain name—certificaciondisney.com;



     c.  in DEB's PowerPoint® presentation of the Infringing

Services to *Disney Executive Bootcamp* attendees; and

     d.  in DEB's *Disney Executive Bootcamp* certificates of

completion issued to attendees ("DEB Certificates") who

complete the *Disney Executive Bootcamp* programming.



*See* Exhibit 6-A through 6-D for a compilation of unauthorized uses of the DISNEY word mark.

28.     The DEB Certificates awarded to *Disney Executive Bootcamp* attendees falsely represent in Spanish, (provided here by certified translation to English), that "The Certification in Service Culture is an International Training Program designed, developed, and certified by Disney…" *See* Exhibit 7 (showing the original statement on the back of the DEB Certificates in Spanish, and the certified English translation of the representations).

29.     DEB has utilized Plaintiff's Properties and Disney Materials without authorization in the content and presentation of the Infringing Services to DEB attendees and prospective customers. This includes Defendants' close to verbatim copying of Plaintiff's DISNEY branded and copyrighted Spanish language participant guide titled *Liderando Excelencia en el Servicio HRG Latin America*, (Leading Excellence in Service HRG Latin America), in Defendants' similarly DISNEY branded study guide, titled *Cultura de Servicio Disney* (Disney Service

Culture). *Compare* Exhibit 8-A and 8-B and the photographs below. DEB distributes the *Cultura de Servicio Disney* study guide to attendees of the Infringing Services as part of DEB's classroom instruction. DEB even asserts its own copyright in its infringing *Cultura de Servicio Disney* study guide, in the name of *Disney Executive Bootcamp*. *See* Exhibit 8-B, the footer of pages 3-68.



## DI PROGRAM GUIDE



## DEB PROGRAM GUIDE











30.     To further connect the Infringing Services with Disney, DEB has also branded the Infringing Services with Plaintiff's federally registered Mickey Mouse Ear design mark ⬡ [Reg. No. 1,524,601], through use of the stylized Mickey Mouse Ear design mark with an added graduation tassel ⬡ (the "Infringing Mickey Ear Design"). DEB's use of the Infringing Mickey Ear Design includes:

        a.     use as its principal mark on the DEB's website (in addition to the DISNEY word mark);



b. DEB presentation materials of the Infringing Services;



c. signage utilized by DEB during its onsite instruction at various *Walt Disney World*® theme parks and resort properties;



d. DEB's Certificates issued to attendees of the Infringing Services;



e.  training materials, including the infringing *Cultura de Servicio Disney* study guide noted above;

 

f.  attendee lanyards and conference ID cards distributed at check-in; and promotional pens, highlighters, bags, and notebooks distributed to attendees as a welcome gift on the first day of the Infringing Services programming; and

 

g.  branded apparel worn by Defendants when presenting the Infringing Services and while on *Walt Disney World*® Resort property.



Photo [L to R]: Juan Palomo; Luis Lainez; Frank Da Costa

*See* Exhibit 9.

31.    Defendants have also reproduced, distributed, and presented unauthorized copies of numerous Disney copyrighted characters and designs in the Infringing Services slide presentations and as part of its *Cultura de Servicio* Disney study guide. These characters include, but are not limited to: Mickey Mouse, Minnie Mouse, Oswald the Lucky Rabbit, Happy, Sneezy, Bashful, Doc, Sleepy, Dopey, Grumpy, Lightening McQueen, Woody, Jessie, Buzz Lightyear, Elsa, Anna, Olaf, Bob Par/Mr. Incredible, Simba, Timone, Winnie the Pooh, Bambi, Cinderella, Ariel, Snow White, Donald Duck, Goofy, Doc McStuffins, Jack Sparrow, Mike Wazowski, Pluto, Rapunzel, Sofia the First, Tinker Bell, and Dumbo. *See* Exhibit 10, and representative photos below, which provide a more comprehensive index of photographs together with Plaintiff's applicable

copyright registrations.



32.     The Defendants have also decorated the attendee tables and the conference area with stand-alone decor exclusively with what Plaintiff believes to be licensed and authorized Disney merchandise to further connect and associate the Infringing Services with Plaintiff and Plaintiff's Properties. *See* Exhibit 11.



33.     In an additional effort to suggest Plaintiff has sponsored or approved

the Infringing Services, the Defendants have arranged through Plaintiff's wholly owned subsidiary, Disney Destinations, for the appearance of an authorized Mickey Mouse costumed character at the opening of its *Disney Executive Bootcamp* conference. This live appearance includes a meet-and-greet with DEB attendees as well as having the Mickey Mouse costumed character participate in individual and class photographs. DEB has utilized photographs of the Mickey Mouse live appearance in its online marketing without authorization.  *See* Exhibit 12, and sample photographs below.

 

34.     DEB's arranging of the Mickey Mouse costumed character appearance for its *Disney Executive Bootcamp* is a direct and willful violation of the Disney Destinations Event Agreement. Upon information and belief, Defendants' have intentionally mispresented the title of their *Disney Executive Bootcamp* as the "Executive Bootcamp," as well as misrepresenting the unauthorized content of the Infringing Services to a travel service intermediary, Full of Dreams Group Tours,

LLC, in order to schedule the appearance of an authorized Mickey Mouse costumed character at a *Disney Executive Bootcamp* in March 2023. Had Defendants truthfully provided the title of the Infringing Services, the unauthorized nature of the Infringing Service's content, or that DEB would utilize the photographs of the Mickey Mouse costumed character meet-and-greet in DEB's online marketing of the Infringing Services, the Mickey Mouse costumed character appearance would not have been authorized by Disney Destinations. *See* Exhibit 13.

35.     Defendants' unauthorized commercial use of Plaintiff's Properties is also evidenced by the expansive online marketing and advertising efforts via Defendants' various commercial websites and numerous social media accounts. *See* Exhibit 14.

36.     In an additional effort to associate the Infringing Services with the Plaintiff, Defendants have taken licensed Disney Mickey Mouse Ear hats and altered the hats by embossing *Disney Executive Bootcamp* on the back (the "Infringing Graduation Hat"). Defendants have then distributed the Infringing Graduation Hat as a gift, along with the DEB Certificates, to attendees at the completion of the Infringing Services programming. DEB's graduation ceremony directly copies DI's established practice of distributing Mickey Mouse graduation hats with certificates of completion to DI attendees who finish Disney Training. *See* Exhibit 15, and photos below.

 

37.    Defendants have edited historical photographs of Disney's founder - Walt Disney - to include a superimposed image of Da Costa, as well as utilizing Da Costa's name next to the names and signatures of Walt Disney, and Disney CEO Robert Iger.  These edited images are presented as slides to attendees during the Infringing Services to further associate Defendants with Disney. *See* Exhibit 16.

 

38.    Defendants have engaged in a series of material misrepresentations to its students and prospective Spanish language attendees by falsely suggesting that Plaintiff, as well as third party entities such as Valencia College and the Society of Human Resource Management, have approved and authorized the Infringing Services and the granting of DEB's Certificates.



39.    To further connect the Infringing Services with Plaintiff and otherwise copy DI's exclusive practice of using the Disney theme parks as a real-world teaching environment, the Defendants conduct and provide without authorization the Infringing Services on the grounds of *Walt Disney World*® Resort properties, including Magic Kingdom, EPCOT, and Animal Kingdom.   DEB's Infringing Services at Disney's theme parks is a direct violation of the terms and conditions of ticketed admission to such theme parks, which violation would be basis for expulsion from the parks.   *See* Exhibit 17, and photos below.

 

40.     DEB has continued to modify and change how it distributes and markets its Infringing Services to further copy and/or trade on the goodwill associated with Plaintiff's Properties. These new methods include, but are not limited to, the following:

a. Da Costa's adoption and use of the brand "Walt Disney World INNOMAGIC presented by Frank D'Costa" and the posting of audio-visual advertisements recorded without authorization on the grounds of Disney's Hollywood Studios. *See* Exhibit 18-A.

b. Da Costa's collaboration with UBBIQUO Business School to offer new Infringing Services titled the "Disney Model", and a 16-week hybrid course titled "Disney & NASA Bootcamp". *See* Exhibit 18-B.

c. Da Costa's expanded Infringing Services course offerings are marketed and advertised through his www.frankdcosta.com website. These new course

offerings include titles such as: Disney Culture through Storytelling; How to Design the Customer Experience; Innovation and Storytelling; Disruptive Leadership; and RoadMap: Disney Culture. *See* Exhibit 18-C.; and

d. Da Costa's collaboration with consulting firms in the United States and Latin America to deliver the Infringing Services to businesses located in Central American countries. In marketing and advertising the Infringing Services to such prospective attendees, Da Costa falsely identifies himself as a former Disney executive and a certified Facilitator from the Disney University. *See* Exhibit 18-D.

41. Given DEB's studied copying of Plaintiff's Properties, DEB's association of Plaintiff's Properties and its Infringing Services, DEB's unauthorized use and copying of Plaintiff's copyrighted Spanish language presentation guide, *Liderando Excelencia en el Servicio*, even after having actual knowledge of the contractual prohibition against the commercial use of Plaintiff's Properties, DEB's violation of multiple Disney contracts and/or terms of service, DEB's unauthorized fabrication of merchandise and study materials associating DEB with Disney, even including copyright and trademark indicia, DEB's prior written notice of Disney's exclusive rights, Da Costa's termination of employment

for cause at *Walt Disney World*® Resort, DEB's activities, as described above, can only be deemed to be a willful violation of Plaintiff's Properties and exclusive rights, intending to harm Plaintiff for DEB's direct pecuniary gain, and if allowed to continue will damage both Disney and unsuspecting Latin American attendees.

### COUNT I – COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101 et seq.)

42.     Plaintiff repeats each allegation set forth in Paragraphs 1-7, 10-24, 27, 29-35, and 37-39 above, as if fully set forth herein.

43.     Plaintiff owns all right, title, and interest in Plaintiff's Copyrights. Further, Plaintiff has complied in all respects with the provisions of the Copyright Act, and holds valid copyright registrations in Plaintiff's Copyrights, *see* Exhibit 1.

44.     Defendants have made unauthorized commercial uses, including, without limitation, unauthorized reproductions and/or copies, distribution, and public displays of Plaintiff's Copyrights as part of their presentation, marketing, offer for sale and sale of the Infringing Services. Representative images of Defendants' unauthorized uses of Plaintiff's Copyrights are alleged above. *See also* Exhibits 1, 3-8, and 10-18.

45.     Defendants had access to Plaintiff's Copyrights, and many of the designs utilized in presenting, marketing, offering for sale and sale of the Infringing Services. Defendants' Infringing Services are substantially similar, if not identical, to Plaintiff's Copyrights.

46.     Without Plaintiff's consent, Defendants have intentionally infringed

and continue to infringe Plaintiff's Copyrights.

47.     As a result, Defendants have engaged in copyright infringement pursuant to 17 U.S.C. § 501. Further, Defendants' conduct constitutes willful copyright infringement pursuant to 17 U.S.C. § 504(c)(2).

48.     Defendants' conduct has injured Plaintiff in a monetary amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 17 U.S.C. § 502; b) Defendants' profits or statutory damages pursuant to 17 U.S.C. § 504 (a) and (c); and c) Plaintiff's costs, including attorneys' fees, in prosecuting this action pursuant to 17 U.S.C. § 505. Further, because Defendants' infringement has been—and continues to be—willful and intentional in nature, Plaintiff may, at its election, recover the maximum amount of statutory damages for each infringed work in accordance with 17 U.S.C. § 504(c)(2).

## COUNT II – TRADEMARK INFRINGEMENT AND TRADEMARK COUNTERFEITING (15 U.S.C. § 1114)

49.     Plaintiff repeats each allegation set forth in Paragraphs 1 through 6, 8 through 26, 28, and 30 through 39 above, as if fully set forth herein.

50.     Plaintiff is the owner of the exclusive rights to Plaintiff's Trademarks, including the federal registrations referenced in Exhibit 2. Each of these trademark registrations is in full force and effect.

51.     Notwithstanding Plaintiff's well-known, common law and statutory rights, Defendants have, and continue to knowingly use in commerce unauthorized reproductions, copies, and/or colorable imitations of Plaintiff's Trademarks in conjunction with the presentation, sale, offering for sale, distribution, and/or advertising of the Infringing Services, as shown more fully on Exhibits 2-18. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

52.     Defendants' unauthorized use of Plaintiff's Trademarks constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that such use is likely to cause confusion, deception, and mistake among the consuming public that Plaintiff sponsors, approves, or is otherwise associated with Defendants' business and Infringing Services.

53.     Defendants' unlawful actions as described herein, are willful and intentional within the meaning of 15 U.S.C. §§ 1114, 1117. These acts have been, and continue to be, undertaken with the intention of trading upon the notoriety and invaluable goodwill established by Plaintiff.

54.     Defendants' trademark infringement has injured Plaintiff in a monetary amount to be determined at trial. Defendants' conduct has also caused, and will continue to cause, irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 15 U.S.C. § 1116; b) Defendants' profits or statutory

damages pursuant to 15 U.S.C. § 1117 (a) and (c); and c) Plaintiff's reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a). Further, because Defendants' infringing conduct has been, and continues to be, willful and intentional in nature and because the Defendants' have utilized counterfeit reproductions of Plaintiff's Trademarks, including but not limited to the Disney word mark, Plaintiff, at its election, is entitled to an enhanced damages award in accordance with 15 U.S.C. § 1117(a) and (c).

### COUNT III – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

55.     Plaintiff repeats each allegation set forth in Paragraphs 1 through 39, and 41 through 51 above, as if fully set forth herein.

56.     Plaintiff's Properties have acquired secondary and distinctive meaning. The consuming public has come to identify Plaintiff's Properties with Plaintiff and its affiliated companies, and with the goods and services offered by Plaintiff.

57.     Defendants' use of Plaintiff's Properties without authorization constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a). Among other things, such use is likely to cause confusion, deception, and mistake among the consuming public as to the source, approval, connection, association, and/or sponsorship of the Infringing Services presented, sold, and offered for sale

by DEB. Further, to confuse consumers into thinking that Plaintiff is associated with DEB and the Infringing Services, Defendants have reproduced Plaintiff's Properties in conjunction with DEB's marketing, advertising, promotional material, and online content. *See* Exhibits 1 through 18.

58.     Defendants' unlawful actions as described herein, are willful and intentional within the meaning of 15 U.S.C. §§ 1114, 1117. These acts have been, and continue to be, intended to trade upon the notoriety and invaluable goodwill established by Plaintiff.

59.     Defendants' trademark infringement has injured Plaintiff in an amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 15 U.S.C. § 1116; b) Defendants' profits pursuant to 15 U.S.C. § 1117 (a); and c) Plaintiff's reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a). Further, because Defendants' infringing conduct has been, and continues to be, willful and intentional in nature, Plaintiff, at its election, is entitled to an enhanced damages award in accordance with 15 U.S.C. § 1117(a).

## COUNT IV – VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

60.     Plaintiff repeats each allegation set forth in Paragraphs 1 through 6, 8 through 26, 28, and 30 through 39 above, as if fully set forth herein.

61.     Defendants' unlawful actions as described herein, are in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

62.     Defendants have registered, trafficked in, and used the domain name: certificaciondisney.com, which is confusingly similar to, and dilutive of the DISNEY word mark, with a bad-faith intent to profit from Plaintiff's goodwill in the mark.

63.     Plaintiff has sustained irreparable harm, and unless Defendants are enjoined from such unauthorized use, will continue to sustain irreparable harm as a result of Defendants' wrongful conduct in violation of 15 U.S.C. § 1125(d)(1)(A).

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff demands entry of a judgment against Defendants and for the following relief:

A.     Permanently enjoin and restrain Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation from:

1.     Manufacturing, advertising, marketing, promoting, offering for sale, selling, and/or distributing the services, including the Infringing Services identified above, bearing or utilizing Plaintiff's Properties, or otherwise utilizing Plaintiff's Properties in conjunction with the sale, offer for sale, and marketing of services and merchandise not authorized by Plaintiff, as identified this Complaint;

2.     Using Plaintiff's Copyrights or Plaintiff's Trademarks in any

unauthorized manner, including in conjunction with the provision, sale, offer for sale, marketing, and/or distribution of teaching, educational, or business training services or related consulting;

3.      Making any false statement or representation to suggest that Defendants or their Infringing Services are affiliated with, or sponsored by Plaintiff or the Disney Institute, and reproducing Plaintiff's Properties in conjunction with the Infringing Services, or DEB's marketing, advertising, promotional material, and online content;

4.      Engaging in any other activity constituting unfair competition with, or an infringement of, Plaintiff's Properties, or dilution of Plaintiff's name(s), reputation, or goodwill;

5.      Aiding, abetting, or otherwise contributing to the manufacturing, advertising, marketing, promoting, offering for sale, and/or selling of goods or services that make unauthorized use of Plaintiff's Properties; and

6.      Effectuating assignments or transfers, forming new entities or associations, or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs 1-5 of Section A.

B.      Direct that Defendants immediately cease the advertising, marketing,

promoting, offering for sale, and/or selling of goods or services, including the Infringing Services, that any way involve Plaintiff's Properties, and permanently remove any uses of the same on the following web-based platforms:

1. Website(s) owned, or otherwise operated, by Defendants, including but not limited to certificaciondisney.com, frankdcosta.com, luislainez.net, and juanpa.art;

2. Social media pages, groups, or accounts registered to, operated by, or otherwise associated with Defendants, including but not limited to those identified in Exhibit 14; and

3. YouTube accounts including but not limited to those identified in Exhibit 14.

C. Direct that Defendants deliver to the undersigned counsel for destruction, any and all:

1. Counterfeit or infringing merchandise or instructional materials in their possession or control bearing any of Plaintiff's Properties, or a simulation, reproduction, counterfeit, copy, or colorable imitation thereof;

2. Devices or software used in the manufacture or production of such merchandise or instructional materials; and

3. Advertising or marketing materials used in conjunction with the sale or offer for sale of the Infringing Services.

D.    Direct that Defendants immediately cease use and ownership of certificaciondisney.com (DEB Domain) in accordance with the terms as follows:

1.    Disable, or maintain any already disabled public access to the DEB Domain;

2.    Initiate transfer of the domain name registrations for the DEB Domain with the current registrar, identifying Plaintiff as the transfer recipient/domain registrant;

3.    Execute all documentation required by GoDaddy.com, associate registrar(s), and/or privacy service provider(s) necessary to effectuate such transfer; and

4.    Should the current registrar delegate complete control of the disposition and use of the DEB Domain to this Court, said registration is ordered to be transferred to Plaintiff, and Plaintiff is ordered to notify the relevant registrar(s) of this Court's Order governing the DEB Domain registration.

E.    Direct that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show compliance with paragraphs A through D above.

F.    Direct such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiff has authorized or is related in any way to Defendants' businesses or unauthorized

services, including but not limited to the Infringing Services.

G.      Award to Plaintiff, Defendants' profits, after an accounting, or at Plaintiff's sole election, statutory damages, including willful statutory damages, pursuant to 17 U.S.C. § 504(c).

H.      Award to Plaintiff three times Defendants' profits, after an accounting, or at Plaintiff's election, statutory damages including, willful statutory damages, pursuant to 15 U.S.C. § 1117 (a) and (c).

I.      Award to Plaintiff three times Defendants' profits, after an accounting, pursuant to 15 U.S.C. §§ 1125(a), 1117(a).

J.      Award to Plaintiff statutory damages as provided for by 15 U.S.C. § 1117(d)(1).

K.      Award to Plaintiff its costs and reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. §§ 1117(a), 1117(b), and 17 U.S.C. § 505.

L.      Direct that the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further Order(s), interpretation, or execution of any Order entered in this action, the modification of any such Order, the enforcement or compliance therewith, and the punishment of any violations thereof.

M.      Award other such relief to Plaintiff as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this 11th day of July 2024.

Michael W. O. Holihan
Florida Bar No.: 0782165
Lead Counsel
Kimberly A. Harchuck
Florida Bar No.: 0064852
Holihan & Harchuck
1101 N. Lake Destiny Rd., Suite 400
Maitland, Florida 32751
Telephone: (407) 660-8575
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for the Plaintiff